J-S43028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PAUL TUCKER-BENNETT | : | |
| | : | |
| Appellant | : | No. 124 EDA 2022 |

Appeal from the Judgment of Sentence Entered April 11, 2019,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0010541-2015.

BEFORE: DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MARCH 30, 2023**

Paul Tucker-Bennett appeals the judgment of sentence imposed following revocation of his probation. Upon review, we affirm.

In 2015, Tucker-Bennett, along with others, were arrested for selling marijuana to a confidential informant with the Philadelphia Police Department. Additionally, when the police executed the search warrant, they saw Tucker-Bennett throw a blue bag which contained two handguns from a second story window. Tucker-Bennett was prohibited from possessing any firearms from a prior conviction.

On January 30, 2017, Tucker-Bennett entered a guilty plea on charges of possession of firearm prohibited, possession with intent to deliver ("PWID"), and conspiracy.[1] Other charges were *nolle prossed*.

---

[1] 18 Pa.C.S.A. § 6106, 35 P.S. § 780-113 (a)(30), and 18 Pa.C.S.A. § 903.

On May 10, 2017, the trial court sentenced Tucker-Bennett to 11½ to 23 months' incarceration on the firearm conviction and 5 years' concurrent probation for PWID and conspiracy.

In August of 2018, while serving his sentence of probation, Tucker-Bennett went with his mother to Shippensburg University in Franklin County to drop his younger sister off at college. As a condition of his probation, Tucker-Bennett was not allowed to leave Philadelphia County without permission. While there, Tucker-Bennett bought marijuana and was arrested. He pled guilty and served a sentence of 6 to 23 months' incarceration in Franklin County for the offense.

As a result, on April 11, 2019, the trial court found Tucker-Bennett to be in direct and technical violation of his probation. The court revoked his probation and sentenced him to 2½ to 5 years' incarceration, followed by 3 years' probation.

On October 11, 2021, following the filing of an amended Post Conviction Relief Act ("PCRA") petition and reinstatement of his right to file a post-sentence motion, Tucker-Bennett filed a motion for reconsideration of sentence *nunc pro tunc*. The trial court denied it on December 20, 2021.

Tucker-Bennett filed this timely appeal.[2]

---

[2] Tucker-Bennett's counseled notice of appeal was filed on January 2, 2022. However, we observe that, in the order denying the *nunc pro tunc* post-sentence motion, the PCRA court stated that Tucker-Bennett had 30 days from the date of that order to file an appeal to this Court. Our Court has addressed
*(Footnote Continued Next Page)*

Tucker-Bennett raises one issue for our review, namely whether his sentence for violating probation was unduly harsh and excessive. Tucker-Bennett's Brief at 7.

Tucker-Bennett challenges the discretionary aspects of his sentence. "It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." *Commonwealth v. Austin*, 66 A.3d 798, 807-08 (Pa. Super. 2013) (citation omitted). This Court has explained that, to reach the merits of a discretionary sentencing issue, we must conduct a four-part analysis to determine the following factors:

> (1) whether the appeal is timely; (2) whether [a]ppellant preserved his issue; (3) whether [a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [in accordance with 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Colon*, 102 A.3d 1033, 1042–43 (Pa. Super. 2014) (quoting *Austin*, 66 A.3d at 808).

---

the situation where a trial court incorrectly advises an appellant of the time limits within which the appeal must be filed after a sentence is imposed at a violation of probation hearing. In *Commonwealth v. Parlante*, 823 A.2d 927, 929 (Pa. Super. 2003), the trial court imposed a sentence for a violation of probation and misstated the time limits within which the appeal had to be filed. Our Court "decline[d] to quash [the] appeal because [Appellant's] error resulted from the trial court's misstatement of the appeal period, which operated as a breakdown in the court's operation." *Id.* We likewise decline to quash Tucker-Bennett's appeal as untimely.

- 3 -

Here, Tucker-Bennett satisfied the first and third requirements under **Colon**. Regarding the remaining requirements, we must review each of Tucker-Bennett's reasons for allowance of his appeal to determine compliance.

In his 2119(f) statement, Tucker-Bennett maintains that the trial court imposed a sentence that was so manifestly excessive as to constitute too severe a punishment and erred in doing so for several reasons. First, he claims that the trial court did not provide adequate reasons for the sentence being so long. Upon review of the record, we observe that this issue was not raised before the trial court. As such, Tucker-Bennett did not properly preserve this claim and therefore failed to satisfy the second requirement of **Colon**. We will not consider this claim.

Next, Tucker-Bennett claims that the trial court considered certain offenses, for which he was not convicted, when it sentenced him. He further claims that the trial court did not consider various mitigating factors and his rehabilitative needs. Tucker-Bennett preserved both of these issues thereby satisfying the second requirement under **Colon**. We further conclude that each of these issues raises a substantial question. **Commonwealth v. Allen**, 24 A.3d 1058, 1064-65 (Pa. Super. 2011) ("[A] claim that a sentence is excessive because the trial court relied on an impermissible factor raises a substantial question.") (citations omitted); **Commonwealth v. Caldwell**, 117 A.3d 763, 769-70 (Pa. Super. 2015) (en banc) ("an excessive sentence claim – in conjunction with an assertion that the court failed to consider

mitigating factor–raises a substantial question."). Accordingly, we consider these claims.

When reviewing a revocation of probation sentence, this Court has stated:

> The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment — a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.
>
> In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference.
>
> Upon revoking probation, a sentencing court may choose from any of the sentencing options that existed at the time of the original sentencing, including incarceration. [U]pon revocation [of probation] . . . the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence.

*Colon*, 102 A.3d at 1044 (quotations and citations omitted).

The trial court must follow the general principle that the sentence be "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Additionally, where probation has been revoked, a sentence of total confinement may only be imposed if:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S.A. § 9771(c).

Tucker-Bennett claims that his sentence was excessive and unreasonable. Specifically, he argues that the trial court considered offenses for which he was never convicted. Tucker-Bennett maintains the court mentioned at the sentence hearing an attempted murder case and firearm offense that he was acquitted of in 2013 and an aggravated assault offense involving a firearm that was withdrawn in 2015. Tucker-Bennett's Brief at 16.

Additionally, Tucker-Bennett argues that the court failed to consider mitigating factors and his rehabilitative needs. In particular, he argues that he was participating in the programs he was supposed to while on probation, and he worked two jobs; he was trying to do better. But Tucker-Bennett maintains that, when he lost custody of his children, he became depressed and that resulted in his reoffending. Thus, according to Tucker-Bennett, given these factors, the court should have imposed a lesser sentence. *Id.* at 15-16.

In sentencing Tucker-Bennett, the court recalled that when it originally sentenced him in 2017, the guideline range was 60-70 months, plus or minus 12. The court remarked that, at that time, Tucker-Bennett's prior record score may have been underrepresented given that he had been acquitted of

attempted murder involving a firearm and had been charged with aggravated assault, again, involving a firearm, which ultimately was withdrawn. Nonetheless, the court imposed a significantly mitigated sentence back in 2017. N.T., 4/11/19, at 26-27.

We recognize that "[a] sentence is invalid if the record discloses that the sentencing court may have *relied* in whole or in part upon an impermissible consideration. This is so because the court violates the defendant's right to due process if, in deciding upon the sentence, it considers unreliable information[.]" **Commonwealth v. Karash**, 452 A.2d 528 (Pa. Super. 1982) (citations omitted) (emphasis added). However, a trial court may consider a defendant's prior arrest not resulting in a conviction when the court properly recognizes the absence of a conviction. **See Commonwealth v. Fries**, 523 A.2d 1134, 1136 (Pa. Super. 1987). Further, this Court has stated that, "the fact that a defendant is guilty of prior criminal conduct for which he escaped prosecution has long been an acceptable sentencing consideration." **Commonwealth v. P.L.S.**, 894 A.2d 120, 130 (Pa. Super. 2006). Indeed,

> [n]ot only does the caselaw authorize a sentencing court to consider unprosecuted criminal conduct, the sentencing guidelines essentially mandate such consideration when a prior record score inadequately reflects a defendant's criminal background. In 204 Pa.Code § 303.5(d), Adequacy of the Prior Record Score, the sentencing guidelines provide that the court "may consider at sentencing previous convictions, juvenile adjudications or dispositions not counted in the calculation of the Prior Record Score, in addition to other factors deemed appropriate by the court."

*Id.* at 131.

Here, we observe that, the offenses referenced by the court were not uncharged offenses. As such, it was improper for the court to consider them.

Notwithstanding this, however, we observe that, although the court referenced Tucker-Bennett's arrests for several offenses for which he ultimately was not convicted, the court did not *rely* on them in resentencing him. The court specifically indicated that the homicide was not a factor in sentencing Tucker-Bennett on his probation revocation. Trial Court Opinion, 4/26/22, at 8 fn. 1. Instead, the court was reflecting on its past handling of Tucker-Bennett's case and the leniency it had granted him, critical of its original judgment given his current violations.

Turning to the matter at hand, the court then concluded that until Tucker-Bennett decided to do better, "society needs to be protected from the actions of someone whose record—criminal record, as a whole, shows very clearly that he presents a danger to society, that he's not amenable to supervision, and that he's likely to re-offend." This was based on the severity of Tucker-Bennett's original offenses, his failure to take advantage of the opportunity given to him, and his repeated behavior which resulted in violations of his probation. "It was apparent that stern words and more probation or a short period of incarceration, would not have an impact and it was time for stronger measure to avoid his reoffending and to vindicate the court's authority." *Id.* at 7.

We further observe that, contrary to Tucker-Bennett's claim, the court considered mitigating factors and his rehabilitative needs. Tucker-Bennett told the court he had been trying while on probation. He explained to the court that his parental rights had been revoked; he became depressed over this and seeing kids at college with their parents caused him to go astray and return to his old vices. He told the court though, now that his children are with his grandmother, he "can do right" and "excel beyond" if given another chance. N.T. 4/11/19, at 23-25.

Ultimately, based upon all the relevant sentencing factors and evidence presented to the court, "the court saw reason for 'hope' and, thus, tempered its sentence by reducing the sentence originally contemplated, in order to make [Tucker-Bennett] 'boot camp eligible.'" Trial Court Opinion, 4/26/22, at 7; N.T., 4/11/19, at 27-28. Again, the court imposed a less severe sentence than it could have, giving Tucker-Bennett another chance as he requested. Additionally, to address his rehabilitative needs, the court required Tucker-Bennett to engage in education programming, vocational training, life-skill training and parenting classes while in custody. N.T. 4/11/19, at 28.

Based upon our review, it is evident that the trial court considered the relevant and appropriate factors when it sentenced Tucker-Bennett. Further, given the deferential standard this Court must apply on appeal and the trial court's rationale for its sentence, we find that the court did not abuse its discretion when it sentenced Tucker-Bennett. His claims merit no relief.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 3/30/2023*